**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVAN CUFF, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN TIRE | : | |
| DISTRIBUTORS, INC., et al., | : | No. 2:20-cv-00784-RAL |
| Defendants | : | |

**MEMORANDUM OPINION**

**Richard A. Lloret**                                                   **October 19, 2021**
**U.S. Magistrate Judge**

### I.      Introduction and Procedural History

In June 2017, American Tire Distributors ("ATD") Distribution Excellence

Manager Kevin Sotak extended an offer to Evan Cuff, an African American man, to work

as a driver for the company, based out of their Malvern, Pennsylvania warehouse. ATD

conditioned the job offer on completion of a successful background check. After one

urinalysis screening for drugs came back as inconclusive, ATD personnel asked Mr. Cuff

to take a second drug test. Mr. Cuff reportedly expressed hostility towards Mr. Sotak

and his colleagues in human resources upon learning he needed to take a second drug

test. While he did ultimately take the second drug test, Mr. Sotak and ATD nevertheless

revoked Mr. Cuff's conditional job offer.

Mr. Cuff filed charges of discrimination with the Pennsylvania Human Relations

Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC")

on or about December 11, 2017. Doc. No. 1, at 6. Mr. Cuff received a dismissal and notice

of rights to plaintiff from the EEOC on or about November 6, 2019. *Id.* Mr. Cuff filed

this suit on February 4, 2020 against Defendants ATD and Mr. Sotak, *id.* at 1, alleging

1

that each defendant engaged in racial discrimination and retaliation against Mr. Cuff for his opposition to unlawful employment practices under 42 U.S.C. § 1981 ("section 1981"), *id.* at 12-13, and retaliation in violation of the Pennsylvania Human Relations Act ("PHRA") § 955, *id.* at 16. Mr. Cuff also alleges that ATD engaged in disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), *id.* at 13-14, retaliation in violation of Title VII, *id.* at 14-15, and discrimination in violation of PHRA § 955, *id.* at 15-16. Additionally, Mr. Cuff alleges that Mr. Sotak engaged in discrimination in violation of the PHRA § 955. *Id.* at 16-17. Discovery closed on July 18, 2021, and Defendants filed this motion for summary judgment on August 9, 2021. Doc. No. 35, at 1, 8.

For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

## II.    Standard of Review

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).[1] Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty*

---

[1] I will call this the "motion burden," as opposed to the burden of proof at trial.

*Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. A court evaluating whether there is sufficient evidence to go to trial must measure the evidence against the burden of proof at trial, *id.* at 252, after crediting the non-moving party's evidence and drawing all reasonable inferences against the moving party. *Id.* at 255.

When a moving party bears the burden of proof at trial,[2] the moving party "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007) (citations omitted). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238. Because the trial burden "includes the obligation to persuade the factfinder that one's propositions of fact are indeed true . . . if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.*

If the moving party successfully shows facts necessary to satisfy its burden of proof at trial, the non-moving party must point "to evidence in the record that creates a genuine issue of material fact." *Id.* (citation omitted). Allegations and denials in pleadings will not do. *See* Fed. R. Civ. P. 56(e)(2). The non-moving party must point to actual evidence in the record on which a jury could decide an issue of fact its way. *Berckeley Inv. Grp., Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party....").

---

[2] I will refer to this as the burden of proof, or trial burden.

"Specious objections" cannot defeat a motion for summary judgment, but "real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *El*, 479 F.3d at 238.

When the tables are turned, and the non-moving party bears the trial burden on an issue, "the [motion] burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The non-moving party need not depose its own witnesses, but must respond with evidence that would be admissible at trial:

> Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Id.* at 324. An affidavit may suffice to establish what a witness would say at trial. *See Woloszyn v. County of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005). So does an unsworn declaration under oath. *Unzicker v. A.W. Chesterton Co.*, No. 2:11-66288-ER; 2015 WL 12941900, at *1 n.1 (E.D. Pa. 2015). And while a court cannot rely on inadmissible evidence in deciding a summary judgment motion, hearsay evidence produced in opposition to a summary judgment motion may be considered "if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that would be admissible at trial." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (consideration of declarants' statements in an affidavit may be considered in deciding a motion for summary judgment when there is no indication that the declarants would not be available for trial) (internal quotation omitted).

4

### III.   Discussion

#### A.      The contours of the dispute.

The Defendants argue that Mr. Cuff is unable to establish that they unlawfully discriminated against him on account of his race or color. Doc. No. 35, at 13-19. They also assert that Mr. Cuff cannot establish a claim for unlawful retaliation against them because the Defendants withdrew the conditional job offer before Mr. Cuff told Mr. Sotak that he would contact his lawyer over alleged discrimination. *Id.* at 19-20.

In his memorandum in opposition, Mr. Cuff argues that, through discovery, he "unearthed evidence that his claim for disability discrimination is his strongest claim." Doc. No. 38, at 2. He alleges that Defendants discriminated against him on account of his diabetic condition in violation of the Americans with Disabilities Act ("ADA"). *Id.* at 2-4. He also argues that "[a] simple review of Plaintiff's complaint confirms that disability discrimination was the primary cause of action upon which Plaintiff's case was based." *Id.* at 6-8.

In their reply, Defendants argue that Mr. Cuff abandoned all claims pleaded in his Complaint (Doc. No. 1) by not addressing them in his memorandum in opposition. Doc. No. 40, at 3-4. They further allege that Mr. Cuff has no colorable claim of disability discrimination against the Defendants because he did not properly plead it. *Id.* at 4-9. In the alternative, the Defendants argue that Mr. Cuff has not shown a genuine dispute of material fact on his alleged disability discrimination claim requiring a jury trial. *Id.* at 10-16.

### B.   Mr. Cuff has not established a prima facie claim of unlawful discrimination on the basis of race or color.

Causes of action arising under section 1981, Title VII, and the PHRA alleging

disparate treatment are analyzed coextensively under the burden-shifting framework

established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). For a plaintiff to

successfully allege unlawful employment discrimination, 1) the plaintiff must establish a

*prima facie* case of discrimination, 2) the defendant must articulate a legitimate,

nondiscriminatory reason for the employment action in response, and 3) the plaintiff

must show that the defendant's proffered rationale was pretextual by a preponderance

of the evidence. *Id.* (citing *Tex. Dep't Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53

(1981); *McDonnell Douglas Corp.*, 411 U.S. at 802).

A court may find the existence of a prima facie case of discrimination when "(1)

the plaintiff belongs to a protected class; (2) he[] was qualified for the position; (3) he[]

was subject to an adverse employment action despite being qualified; and (4) under

circumstances that raise an inference of discriminatory action, the employer continued

to seek out individuals with qualifications similar to the plaintiff's to fill the position."

*Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (internal citations

omitted). "[T]he elements of a prima facie case depend on the facts of the particular

case." *Jones*, 198 F.3d at 411. Whether a plaintiff presents a prima facie case of

discrimination is a question of law which the Court must decide. *Sarullo*, 352 F.3d at

797.

The Defendants argue that Mr. Cuff does not establish a prima facie case of

discrimination because Mr. Sotak knew of Mr. Cuff's race when he extended him a

conditional employment offer, Mr. Sotak demonstrated that he wanted to onboard Mr.

Cuff as quickly as possible, and Mr. Sotak and ATD only concluded that Mr. Cuff was not

a good fit after he lashed out at Mr. Sotak and human resources personnel over the

inconclusive drug screening results. Doc. No. 35, at 15-16. The Defendants also argue

that Mr. Cuff presents no evidence that the Defendants developed "overnight prejudice"

toward Mr. Cuff that prompted a termination of his conditional offer. *Id.* at 16. Mr. Cuff

does not address these arguments. After reviewing the Joint Appendix, I agree with

Defendants that Mr. Cuff fails to establish a prima facie case of racial discrimination.

Mr. Sotak knew of Mr. Cuff's race when he decided to offer Mr. Cuff the driver

position at the end of his interview, and the two other ATD personnel on the hiring

committee agreed. Doc. No. 35-2, at 9-10 (Sotak Dep.). Furthermore, Mr. Sotak told his

colleagues in human resources that Mr. Cuff had been "very angry and disrespectful" on

the phone after learning he would have to take a second drug test and said he wanted to

withdraw the offer because "[h]is response was not something that I want associated

with ATD especially someone that would be working directly with customers." *Id.* at 27-

30 (email correspondence among Mr. Sotak and two ATD human resources

representatives). Another human resources representative replied to this email saying

that "[Mr. Cuff] was pretty nasty to me and told me 'if I stop talking he can explain

himself.'" *Id.* at 29. Mr. Sotak testified that he revoked the offer primarily because of Mr.

Cuff's conduct over the phone. *Id.* at 16-17 (Sotak. Dep.). Mr. Sotak also testified that he

told Mr. Cuff that this role is a customer-facing role and "we couldn't have that type of

behavior which was part of the rescinding of the offer." *Id.* at 19 (Sotak. Dep.).

Mr. Cuff argues that Defendants' emails indicate that his conditional offer was

revoked because he allegedly failed to take a second drug test, even though he submitted

a second drug test on July 14, 2017. Doc. No. 38, at 7-8; Doc. No. 38-1, at 10-11 (Defs.'
Stmt. Undisputed Facts); *see also* Doc. No. 35-2, at 27-30, 33. Defendants concede they
learned he took a second urinalysis after they revoked the offer. Doc. 35-1, at 4 (Defs.'
Stmt. Undisputed Facts); *see also* Doc. No. 35-2, at 33. Mr. Sotak even acknowledges
that Mr. Cuff's alleged failure to take a second drug was one reason for the termination
of the offer. Doc. No. 35-2, at 16-17, 22-24 (Sotak. Dep.).

After reviewing the evidence, I find that irrespective of whether Mr. Cuff 's
supposed failure to submit a second drug test was a factor in ATD's decision to
terminate the offer, the nature of Mr. Cuff's interactions with Mr. Sotak and ATD
personnel is the only other plausible rationale for ATD's revocation of Mr. Cuff's offer.
Doc. No. 35-2, at 27-30, 33 (internal emails among Mr. Sotak and ATD human
resources representatives). Nowhere in these emails or in other record evidence is there
a discussion of Mr. Cuff's race, nor are there any statements which a reasonable juror
could construe as relating to race.

Furthermore, to make a prima facie case of discrimination, Mr. Cuff has the
burden to show that ATD "is treating some people less favorably than others because of
their race, color, religion, sex, or national origin." *Sarullo*, 352 F.3d at 798 (quoting
*Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)). I agree with
Defendants that Mr. Cuff submits no evidence that non-Black applicants were treated
differently in the course of the background check process. Doc. No. 35, at 17-18.
Whether ATD terminated Mr. Cuff's offer because of his conduct on the phone or his
alleged failure to take a second drug test, I nevertheless find no evidence that ATD's
decision to terminate Mr. Cuff's conditional offer is connected to any discrimination on
the basis of race or color.

Because I find that Mr. Cuff does not meet his burden to establish a prima facie case of discrimination on the basis of race or color, I do not reach the other steps of the *McDonnell Douglas* analysis.

### C.   Mr. Cuff has not established a prima facie claim of retaliation for engaging in a protected activity.

Section 1981, Title VII, and PCRA retaliation claims may be assessed in tandem to the extent that their statutory language is substantially similar. *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Tomaszewski v. City of Phila.*, 460 F.Supp.3d 577, 599 (E.D. Pa. 2020) (DuBois, J.). To establish a prima facie case of unlawful retaliation, Mr. Cuff must show "'(1) [he] engaged in activity protected by [the statutes]; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action.'" *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006), *as amended* (Sept. 13, 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). Additionally, Mr. Cuff "must produce evidence 'sufficient to raise the inference that [his] protected activity was the *likely reason* for the adverse [employment] action.'" *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

The Defendants argue that they did not retaliate against Mr. Cuff for taking a protected action because Mr. Cuff did not threaten legal action over Defendants' allegedly discriminatory behavior until after Mr. Sotak communicated the revocation of ATD's offer to Mr. Cuff. Doc. No. 35, at 20. Mr. Cuff does not allege otherwise. The record evidence confirms this version of events. *See* Doc. No. 38-8, at 9-10 (Sotak Dep.).

Thus, I find that Mr. Cuff fails to produce evidence sufficient to establish a prima facie case of unlawful discrimination.

**D.      Mr. Cuff has not properly raised an allegation of disability discrimination pursuant to the Americans with Disabilities Act.**

Rather than directly address Defendants' arguments, Mr. Cuff responds to their motion by arguing that Defendants discriminated against him on account of his diabetes in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Doc. No. 38, at 2-5. Defendants respond that this claim was not properly raised and is meritless. Doc. No. 40, at 4-16. Furthermore, Defendants explain that Mr. Cuff failed to respond to their requests to collaborate on preparing a Joint Appendix as required by my policies and procedures and instead merely submitted additional evidence without seeking leave of court. *Id.* at 10-11. Because of these procedural violations, I find Mr. Cuff's claims to be improperly raised. In addition to Mr. Cuff's procedural shortcomings, I find his claim to be without merit.

Defendants assert that Mr. Cuff did not address disability discrimination under any count in his complaint, and that no claim is raised under the ADA. *Id.* at 6. While Mr. Cuff alleged facts about disability discrimination his complaint, he never clearly asserted any claims involving disability discrimination under the articulated legal framework. *See* Doc. No. 1, at 12-17. Mr. Cuff also never alleged an ADA violation in his complaint, *see id.*, nor has he ever sought leave to amend his complaint according to the record before me. In fact, Mr. Cuff's counsel discussed the ADA claim previously, and he even acknowledged in a July 2020 settlement conference that he would need to seek the leave of court to amend the complaint to add the claim. Doc. No. 40, at 6-7. Yet, discovery proceeded, and Mr. Cuff never sought leave to amend the complaint. *Id.*

Without more, Mr. Cuff cannot simply assert this claim in his memorandum in

opposition to summary judgment and expect a court to address it, especially considering

that discovery in the case has since closed (Doc. No. 34).[3]

Mr. Cuff submitted an affidavit with his memorandum in opposition, which seeks

to supply facts substantiating his disability discrimination claim but contradicts much of

the evidence in the joint appendix. *See* Doc. No. 38-2. Because it is unsubstantiated,

drafted well after the close of discovery and the filing of this motion, and violates my

policies and procedures, I will not credit it.

In the Third Circuit, courts are not required to consider affidavits which appear

to be filed merely for the purpose of defeating summary judgment. "[W]hen there is

independent evidence in the record to bolster an otherwise questionable affidavit, courts

generally have refused to disregard the affidavit." *Jiminez v. All Am. Rathskeller, Inc.*,

503 F.3d 247, 254 (3d Cir. 2007) (quoting *Baer v. Chase*, 392 F.3d 609, 625 (3d Cir.

2004)). On the contrary, "if it is clear that an affidavit is offered solely for the purpose of

defeating summary judgment, it is proper for the trial judge to conclude that no

reasonable jury could accord that affidavit evidentiary weight and that summary

judgment is appropriate." *Id.* at 253. Factors I may consider in determining whether an

affidavit should be disregarded on summary judgment include "[t]he timing of the

---

[3] Mr. Cuff's complaint is not a model of clarity as to the causes of action he pleads, including whether he pleads disability discrimination in the first place. For instance, under his Retaliation claim under Title VII, Mr. Cuff wrote "Plaintiff continued to oppose the severe and pervasive discrimination and harassment in the workplace." Doc. No. 1, at 15 (Pl. Compl. ¶ 81). Yet it is undisputed that Mr. Cuff was never actually employed by ATD. He also wrote, "Plaintiff, Regina Hinton, was subjected to race, color, gender and sex discrimination which was severe and pervasive." *Id.* at 14 (Pl. Compl. ¶ 73). This case has nothing to do with anyone named Regina Hinton. The material facts section of the complaint addresses alleged instances of disability discrimination. *Id.* at 8-9 (Pl. Compl. ¶¶ 34-39). However, Mr. Cuff never pled any cause of action under the ADA, nor did he raise disability discrimination as part of his claims for relief. *See id.* at 12-17 (Pl. Compl. ¶¶ 65-95).

affidavit, whether there is a plausible explanation for the contradictory statements, and whether there is independent evidence in the record supporting the affidavit." *J.R. v. Lehigh Cnty.*, 534 F. App'x 104, 108 (3d Cir. 2013) (citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268–69 (3d Cir. 2010)) (finding that an affidavit was only offered for the purpose of defeating summary judgment, and thus should not be considered, when it was filed after the close of discovery and the filing of a motion for summary judgment, and it contradicted prior depositions without explanation). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Mr. Cuff's affidavit was drafted on August 30, 2021, well after the July 2021 close of discovery and the August 9, 2021 filing of this motion for summary judgment. *See generally* Docs. No. 34, 35, 38-2. Mr. Cuff offers no explanation for the timing of the affidavit other than a vague assertion that facts learned through discovery indicate that his disability discrimination claim is stronger than his racial discrimination claim. Doc. No. 38, at 2. Furthermore, Mr. Cuff offers no explanation as to why he was deposed, *see* Doc. No. 40, at 13 n.14, yet submitted this affidavit rather than his deposition transcript. The Third Circuit has previously explained that "prior depositions are more reliable than affidavits" because the declarant is available for cross-examination, which he is not when drafting an affidavit. *Jiminez*, 503 F.3d at 253 (internal citation omitted).

Furthermore, if Defendants' averment is correct that they contacted Mr. Cuff's counsel multiple times in the weeks prior to filing their motion for summary judgment to compile a joint appendix, only to receive no response, Doc. No. 35-2, at 1, then I am

even more troubled by counsel's conduct in submitting this affidavit, along with a few additional pieces of evidence, with this memorandum in opposition. My policies and procedures clearly state that a party who files a motion for summary judgment "must meet and confer with all other parties and develop a single, joint appendix of all exhibits," and a party seeking to supplement the joint appendix after the motion is filed must move for permission to do so. The Honorable Richard A. Lloret, *Policies and Procedures*, U.S. Dist. Ct. for the E. Dist. Of Pa. 3, https://www.paed.uscourts.gov/documents/procedures/llopol.pdf. My rules also state that I "will not consider evidence not included in the joint appendix." *Id.*

The policies and procedures which govern conduct in my courtroom are present to ensure that disputes are resolved justly, fairly, and efficiently. The Defendants made a good-faith effort to submit a joint appendix in conjunction with Mr. Cuff, in compliance with these rules and the underlying policy. Yet Mr. Cuff submitted additional evidence with his memorandum in opposition without ever seeking leave to do so. Absent a showing of undue hardship, I cannot accept this failure to follow relevant procedural rules. Thus, I will not consider Mr. Cuff's affidavit in adjudicating this motion, nor will I consider any other evidence Mr. Cuff submitted with his memorandum.

Even if I were to consider Mr. Cuff's newly alleged cause of action under the ADA, I would find it to be without merit. Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. "In order to make out a prima facie case under the ADA, a plaintiff must be able to establish that he or she (1) has a 'disability' (2) is a 'qualified individual' and (3) has suffered an adverse

employment action because of that disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998). The dispute at hand concerns whether Mr. Cuff suffered an adverse employment action because of his diabetes.

Outside of Mr. Cuff's affidavit, the only references in the record submitted by *either party* to Mr. Cuff's diabetes or the alleged results of the drug test are a few brief exchanges in Mr. Sotak's deposition, which plainly indicate that he did not discriminate against Mr. Cuff on the basis of his diabetic condition. Mr. Sotak testified that he only discussed issues relating to diabetes with Mr. Cuff in a July 14, 2017 telephone conversation, which occurred after Mr. Sotak left Mr. Cuff a voicemail terminating the offer. *See* Doc. No. 38-8, at 20 (Sotak Dep.).[4] Additionally, Mr. Sotak made clear that he could not access the actual results of the drug tests. *Id.* at 11. (Sotak Dep.).[5] Mr. Sotak even testified that he was unaware that Mr. Cuff needed to take a second drug test until Mr. Cuff called him. Doc. No. 35-2, at 14-16 (Sotak Dep.).

Both parties submit evidence showing that Mr. Sotak made note of Mr. Cuff's Department of Transportation medical card following his interview. *See* Doc. No. 35-2, at 48; Doc. No. 38-3, at 2 (hiring process notes for Mr. Cuff's ATD candidacy). However, this alone is insufficient to indicate discrimination. Pennsylvania law requires commercial drivers to submit a medical examiner's certificate to the Pennsylvania Department of Transportation to receive and maintain a commercial driver's license. 75 Pa. Cons. Stat. § 1609.2. As a medical clearance is required for one to obtain a

---

[4] "A: … [Mr. Cuff] did mention diabetes to me. And I said that's not part of what we do or what I do. That if he was concerned, he would need to reach out to a doctor. Q:[…] So how many times did Mr. Cuff mention diabetes to you? A: Just in that one conversation on the 14th." Doc. No. 38-8, at 20 (Sotak Dep.).

[5] "Q: Would you see the results of the drug of the urinalysis? A: No, I would not. That's private information that Quest and ATD typically utilize." Doc. No. 38-8, at 11 (Sotak Dep.).

commercial driver's license in Pennsylvania, I find that any evaluation of Mr. Cuff's

medical card by ATD personnel without more is insufficient for a finding of

discrimination.

Irrespective of Mr. Cuff's diabetes, the proffered rationales for the revocation of

Mr. Cuff's job offer were his alleged failure to take a second drug test and his conduct on

the phone while speaking with Mr. Sotak and other ADA personnel. No reasonable jury

could find that these particular actions were connected to Mr. Cuff's disability, as Mr.

Cuff provides no evidence outside his affidavit suggesting that any proffered explanation

was pretextual. As discussed, the record indicates that Mr. Sotak had no awareness of

the contents of the drug test. He could not discriminate against Mr. Cuff on account of

the drug test results if he could not see the results himself.

I also agree with Defendants that Mr. Cuff's ADA claim would be time barred.

Doc. No. 40, at 8. Under the ADA, a plaintiff must exhaust all administrative remedies

in addressing a claim of discrimination before seeking judicial review. 42 U.S.C. §

12117(a) (citing 42 U.S.C. §§ 2000e-4–9).  A plaintiff "who file[s] [a charge] in deferral

states [including Pennsylvania] must submit [his] administrative discrimination charge

[to the relevant state agency] within 300 days of the challenged employment action."

*Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). Here, Mr. Cuff

provides no evidence that he filed any administrative charge asserting discrimination

under the ADA, let alone that a charge was submitted within 300 days of the July 2017

termination of Mr. Cuff's job offer. To survive summary judgment on this claim, Mr.

Cuff must point to record evidence countering Defendants' claim that he failed to

comply with the administrative exhaustion requirement that attaches to his ADA claim.

*See El*, 479 F.3d at 238; *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) (failure to

exhaust administrative remedies is an affirmative defense). However, Mr. Cuff has not done so. Thus, I find that even were I to take cognizance of Mr. Cuff's ADA claim, it would be time-barred.

Therefore, I find that Mr. Cuff does not raise any legal or factual claims in his memorandum in opposition which warrant the denial of Defendants' motion for summary judgment.

## IV. Conclusion

For the reasons described, I will grant summary judgment to Defendants American Tire Distributors and Kevin Sotak on all counts.

BY THE COURT:


/s/ Richard A. Lloret
**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**